IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JULIE OLSON,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 24-cv-00282-DKW-WRP<br><br>**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**[1] |

　　　　Plaintiff Julie Olson appeals the denial of her application for disability insurance benefits, asserting that the Administrative Law Judge (ALJ) erred in evaluating (1) Olson's symptom testimony and (2) the opinions of various doctors and consultants, resulting in a residual functional capacity (RFC) that was not supported by substantial evidence.  The government opposes Olson's appeal.  At the heart of the parties' dispute is whether there is substantial evidence to support the ALJ's conclusion that Olson's documented anxiety and post-traumatic stress disorders (PTSD), arising after Olson was assaulted on-the-job by a co-worker, do not prevent her from working as consistently as required.

---

[1] Pursuant to Local Rule 7.1(c), the Court elects to decide this matter without a hearing.

Upon review of the parties' briefing and the record *in toto*, the Court, at this juncture, requires additional explanation from the ALJ before that question can be answered. Specifically, in the RFC, the ALJ found, among other things, that Olson was capable of having "occasional contact" with co-workers and supervisors, but "no contact" with the general public. The ALJ, however, provides no explanation for this difference. In light of Olson's conditions and history, an explanation for this difference is necessary, particularly where, as here, Olson's conditions resulted from an assault by a *co-worker*. Accordingly, as more fully explained below, this case is REMANDED for further analysis by the ALJ.

## BACKGROUND

### I.     Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA). 20 C.F.R. § 404.1520. First, the claimant must demonstrate that she is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities. *Id*. §§ 404.1520(a)(4)(ii), (c). Third, if the impairment matches or is equivalent to an established listing under the

governing regulations, the claimant is judged conclusively disabled.  *Id*. §§ 404.1520(a)(4)(iii).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's RFC to perform work.  *Id*. § 404.1520(e).  The evaluation then proceeds to a fourth step, which requires the claimant to show her impairment, in light of the RFC, prevents her from performing work she performed in the past.  *Id*. §§ 404.1520(a)(4)(iv), (e), (f).  If the claimant is able to perform her previous work, she is not disabled. *Id*. § 404.1520(f).  If the claimant cannot perform her past work, though, the evaluation proceeds to a fifth step.  *Id*. §§ 404.1520(a)(4)(v), (g).  At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy.  *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at Step Five, the burden moves to the Commissioner).  If the Commissioner fails to meet this burden, the claimant is deemed disabled.  20 C.F.R. § 404.1520(g)(1).

## II. Olson's Administrative Proceeding

On August 18, 2023, the ALJ issued a decision finding Olson "not disabled" for purposes of her application for disability insurance benefits. Administrative Record (AR) at 31. At Step One of the evaluation process, the ALJ determined that Olson had not engaged in substantial gainful activity since the alleged onset date of October 15, 2018. *Id*. at 19. At Step Two, the ALJ determined that Olson had the following severe impairments: "major depressive disorder; anxiety disorder; post-traumatic stress disorder (PTSD); and panic disorder without agoraphobia." *Id*. At Step Three, the ALJ determined that Olson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*. at 20-22.

Before reaching Step Four, the ALJ determined that Olson had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: "can understand, remember, and carry out simple instructions involving occasional contact with co-workers and supervisors; no contact with the general public; and do work that is not performed at production pace. *Id*. at 22-30.

At Step Four, the ALJ determined that Olson was unable to perform any past relevant work. *Id*. at 30. At Step Five, the ALJ determined that, in light of Olson's RFC, age, education, and work experience, she could perform jobs existing in significant numbers in the national economy. *Id*. at 30-31. Specifically, a vocational expert (VE) testified that Olson could do the following jobs: cleaner; mail sorter; and industrial cleaner. *Id*. at 31. This determination resulted in the ALJ finding that Olson was not disabled from October 15, 2018 through the date of the decision. *Id*.

On May 10, 2024, the Appeals Council denied Olson's request for review, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. *Id*. at 1.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more

than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).

## DISCUSSION

In her Opening Brief, Olson argues that the ALJ erred in evaluating her symptom testimony and the opinions of two treating nurse practitioners. Essentially, Olson argues that she is not able to work because, due to psychological disorders arising after her assault by a co-worker, she does not leave her home alone, doing so only with a friend or family member. The government disagrees that the ALJ erred, arguing that there is evidence of Olson's improved functioning and her ability to perform activities of daily living outside the home.

In light of the RFC, the Court does not resolve the parties' apparent conflict at this time. As mentioned above, the RFC states that Olson can have "occasional contact" with co-workers and supervisors, but "no contact" with the general public. AR at 22. Having reviewed the entirety of the ALJ's decision and the cited record, the Court cannot find an explanation for this seemingly disparate treatment of co-workers and the general public. The only possible support for the same comes from the ALJ's discussion of the opinions of the state agency consultants,

identified as Dr. B. Young and Dr. Jeffrey Akaka. *See id*. at 28. In doing so, the ALJ states that both doctors found Olson "limited to simple routine tasks with limited contacts and no public contacts." *Id*. However, the cited record, which is the doctors' disability determinations, is not so clear.

In both of their reports, the doctors found that Olson was "moderately limited" in her ability to interact with the general public and "get along" with co-workers. *Id*. at 79, 87. In explaining Olson's "social interaction" limitations, Dr. Young stated that they were "moderate" because Olson was "[a]ble to interact more than adequately with several different therapists at [her medical provider]." *Id*. at 79. However, there is no explanation of how Olson's ability to interact with her *therapists* is remotely connected or relevant to her ability to "occasional[ly]" interact with co-workers for an eight-hour workday. For his part, Dr. Akaka stated that, "[g]iven everything, claimant should be able to perform adequately with limited social contact, such as work that could be performed at home…." *Id*. at 87. In explaining Olson's limitations in "adaptation", Dr. Akaka repeated that, "[a]lthough unable to take appropriate precautions against her severely traumatic workplace hazard of [October 2018], she should be able to adapt to a workplace that has minimal to no risk of such a hazard befalling her again, such as one with limited social contact[] or one where she could work remotely from home." *Id*. at

7

88. There is, however, no explanation of how Olson's "occasional contact" with co-workers can be reconciled with the "minimal or no risk" scenario described by Dr. Akaka. Moreover, given Dr. Akaka's emphasis on "work[ing] from home", nothing in the record, such as the VE's testimony, indicates whether jobs like cleaner and mail sorter were appropriate for Olson.[2]

Put simply, on the present record and in light of Olson's documented medical conditions, the Court cannot discern a basis for differentiating between co-workers and members of the public, as reflected in the RFC. Moreover, nothing in the ALJ's decision provides an explanation, clear or otherwise, for the same. While it is certainly not a foregone conclusion that Olson's interactions with co-workers and members of the public must be the same, at the very least, there must be a reasoned explanation if the contact is to be different. For example, what is it about co-workers (or Olson herself) that allows Olson to have "occasional contact" with co-workers, but "no contact" with the general public? This is particularly so

---

[2] An unstated explanation for the differing treatment between co-workers and the general public may be that co-workers, generally, have some familiarity with each other while members of the public, generally, do not. In other words, they are not "strangers." However, at least on the first day of meeting a work colleague, a co-worker is a "stranger" as much as a member of the public, and, here, the ALJ provides no explanation of how Olson would be able to overcome such a first-day meeting with a co-worker, while acknowledging that she would be unable to do so with a member of the public.

in this case, where "occasional contact" is afforded to *co-workers*–precisely the type of individual that assaulted Olson in the first place.

## **CONCLUSION**

To the extent set forth herein, the Commissioner's decision, denying Olson's application for disability insurance benefits, is REVERSED.  This case is REMANDED to the Commissioner for further administrative proceedings consistent with this Order.[3]  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: January 15, 2025 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

[3] In light of the findings herein and order remanding to the ALJ, the Court does not address any other issues raised in the parties' briefs at this time.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding to the ALJ and, as a result, declining to reach an alternative ground for remand).